ORIGINAL

# In the United States Court of Federal Claims

No. 13-929 C
(Filed July 22, 2014)

UNPUBLISHED

FILED
JUL 22 2014
U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * * *  *
JUAN MANUEL SAHAGUN-          *
PELAYO,                       *   Pro Se Plaintiff; RCFC 12(b)(1);
                              *   RCFC 12(b)(6); Tort Claim;
          Pro Se Plaintiff,   *   Implausible Breach of Contract
                              *   Claim.
     v.                       *
                              *
THE UNITED STATES,            *
                              *
          Defendant.          *
* * * * * * * * * * * * * *  *
```

*Juan Manuel Sahagun-Pelayo*, Oakdale, LA, *pro se*.

*P. Davis Oliver*, United States Department of Justice, with whom were *Stuart F. Delery*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Steven J. Gillingham*, Assistant Director, Washington, DC, for defendant.

## OPINION

**BUSH**, *Judge*.

    The court has before it defendant's motion to dismiss this suit, which was brought pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). Defendant's motion was filed January 28, 2014 and has been fully briefed. For the reasons set forth below, defendant's motion is granted.

## BACKGROUND[1]

Plaintiff Juan Manuel Sahagun-Pelayo is incarcerated in a federal prison in Louisiana. Mr. Sahagun-Pelayo asserts that he is a Mexican citizen and that he provided confidential informant services to a variety of American federal agencies investigating drug and gun trafficking. Compl. at 1, App. at 2-4, 10.[2] The complaint presents two claims: (1) a tort claim, citing the "Federal Tort Claims Act, 28 U.S.C. § [1346(b)(1) (2012)]"; and (2) a "Breach of Contract" claim, alleging that a verbal confidential informant contract with the United States was breached. Compl. at 1, App. at 9. Mr. Sahagun-Pelayo's complaint asserts that plaintiff is owed $84,717,000 for his claims. *Id.* at 3, App. at 18.

Three years ago, Mr. Sahagun-Pelayo presented essentially the same claims in a complaint filed in the United States District Court for the District of Columbia, although the relief requested was then set at $1,500,000. *Pelayo v. United States*, No. 1:11-cv-01430-UNA (DDC filed Aug. 8, 2011). The tort claim was dismissed for failure to exhaust administrative remedies and the breach of contract claim was dismissed for exceeding the monetary limit of the district court's contract claims jurisdiction.[3] *Pelayo v. United States*, No. 11-1430, 2011 WL 5244363, at *1 (DDC Oct. 31, 2011).

Plaintiff filed his suit in this court on November 22, 2013. He is proceeding *pro se* and *in forma pauperis*. He requested and the court ordered defendant to provide him with the source materials cited in defendant's motion to dismiss. The court now turns to the standards of review applicable in this case.

## DISCUSSION

---

[1] The facts recited here are taken from plaintiff's complaint, an appendix of exhibits to the complaint, plaintiff's response to defendant's motion to dismiss, and court records of a similar suit Mr. Sahagun-Pelayo filed in the United States District Court for the District of Columbia. *See Pelayo v. United States*, No. 1:11-cv-01430-UNA (DDC filed Aug. 8, 2011).

[2] The court has supplied page numbers to the documents attached to the complaint.

[3] These claims had also been summarily dismissed at an earlier date. *Pelayo v. United States*, No. 11-1430, 2011 WL 3797742, at *1 (DDC Aug. 26, 2011).

2

## I. Standards of Review

### A. *Pro Se* Litigants

The court acknowledges that Mr. Sahagun-Pelayo is proceeding *pro se*, and is "not expected to frame issues with the precision of a common law pleading." *Roche v. U.S. Postal Serv.*, 828 F.2d 1555, 1558 (Fed. Cir. 1987). *Pro se* plaintiffs are entitled to a liberal construction of their pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"). Accordingly, the court has examined the complaint and plaintiff's response brief thoroughly in an attempt to discern plaintiff's claims and legal arguments.[4]

### B. RCFC 12(b)(1)

In considering the issue of subject matter jurisdiction, this court must presume all undisputed factual allegations in the complaint to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). However, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748 (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

### C. RCFC 12(b)(6)

---

[4] Although defendant asserts that the court should consider only the complaint when analyzing plaintiff's claims, Def.'s Reply at 1, 3-4, the court has also considered plaintiff's response brief as an informal clarification of the statement of the claims presented in the complaint. *See, e.g., Gardner v. United States*, No. 10-451, 2011 WL 678429, at *4 n.5 (Fed. Cl. Feb. 17, 2011) (construing a *pro se* plaintiff's response to a motion to dismiss as an amendment to her complaint); *Watson v. United States*, No. 06-716, 2007 WL 5171595, at *6-7 (Fed. Cl. Jan. 26, 2007) (considering a claim raised for the first time in a *pro se* plaintiff's response to a motion to dismiss).

It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When considering a motion to dismiss brought under RCFC 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." *Scheuer*, 416 U.S. at 236. The court must inquire, however, whether the complaint meets the "plausibility" standard recently described by the United States Supreme Court, *i.e.*, whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560, 563 (2007) (*Twombly*) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*Iqbal*) (quoting *Twombly*, 550 U.S. at 570).

As the United States Court of Appeals for the Federal Circuit has explained:

> We must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff. To state a claim, the complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing of entitlement to relief. The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face.

*Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting and citing *Twombly*, 550 U.S. at 555-57, 570 and citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). The post-*Twombly* standard has frequently been described as context-specific in its application. *See, e.g., Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") (citation omitted). As this court now considers claims challenged by motions brought under RCFC 12(b)(6), *Twombly* and *Iqbal* are properly read to establish a slightly less hospitable review of the sufficiency of factual allegations presented in a complaint. *E.g., Dobyns v. United States*, 91

4

Fed. Cl. 412, 422-28 (2010) (conducting a thorough analysis of the impact of *Twombly* and *Iqbal* on this court's standard of review for RCFC 12(b)(6) motions).

Under *Twombly* and *Iqbal*, the court must not mistake legal conclusions presented in a complaint for factual allegations which are entitled to favorable inferences. *See, e.g., Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1062 (Fed. Cir. 2012) ("The Supreme Court explained in *Twombly* that while Rule 8 does not require 'detailed factual allegations,' it does require more than 'labels and conclusions.'" (citing *Twombly*, 550 U.S. at 555)). The following passage from *Sioux Honey* appears to capture the essence of the post-*Twombly* standard of review for motions brought under RCFC 12(b)(6):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

672 F.3d at 1062-63 (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 556-58, 570) (internal quotations omitted).

It is important to note that pre-*Twombly* cases provide very little assistance when considering RCFC 12(b)(6) challenges to a complaint, because these cases used a different standard of review, one where dismissal was forbidden unless the court found that "it is beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). *Conley*'s formulation of the standard of review was overruled by *Twombly* and is no longer

the proper standard to apply. *Twombly*, 550 U.S. at 562-63.

One pre-*Twombly* decision relied upon by defendant in this case, *Sommers Oil Co. v. United States*, 241 F.3d 1375 (Fed. Cir. 2001), employs the superseded *Conley* standard. *See id.* at 1378 ("A trial court should not dismiss a complaint for failure to state a claim unless it is 'beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.'" (citing *Hamlet*, 873 F.2d at 1416)). The *Sommers Oil* holding is a clear example of a court applying the *Conley* standard, not the *Twombly* standard. *See May v. United States*, 80 Fed. Cl. 442, 446 (2008) (citing *Sommers Oil* as an example of cases applying the *Conley* standard of review, and then discussing how the *Twombly* standard has replaced the *Conley* standard). For this reason, *Sommers Oil*, with its distinguishable facts and its application of a superseded standard of review, is of no value in this court's RCFC 12(b)(6) analysis.

## II. Analysis

### A. Tort Claim

This court's jurisdiction does not extend to the consideration of tort claims. 28 U.S.C. § 1491(a) (2012). Defendant argues, and plaintiff does not dispute, that Mr. Sahagun-Pelayo's claim sounding in tort must be dismissed for lack of jurisdiction. Def.'s Reply at 2. The court agrees and grants defendant's RCFC 12(b)(1) motion as to plaintiff's tort claim.

### B. Breach of Contract Claim

#### 1. The Alleged Verbal Agreement

The complaint alleges that various federal agents entered into a verbal agreement with Mr. Sahagun-Pelayo so that he would provide information leading to the arrests of various Mexican drug cartel members. Compl. App. at 8-10. The agencies allegedly involved included the Drug Enforcement Administration (DEA), Immigration and Customs Enforcement (ICE), the Federal Bureau of Investigation (FBI), and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). *Id.* The complaint identifies an ICE agent (Jesus Loscano), a DEA operative (Carmen); an FBI employee (Mike Kosinsky); and, "Jhon an other's"

from ATF.[5] *Id.* at 10. Nowhere in the complaint, or in plaintiff's response brief, is a specific individual identified as having represented the United States in negotiating the alleged confidential informant contract with Mr. Sahagun-Pelayo. Nor is the specific agency that was to provide payment and other services to plaintiff identified.

Thus, the complaint contains an extremely vague allegation of a verbal agreement between a number of federal employees from various agencies and the plaintiff. The terms of the alleged agreement are similarly unclear. Mr. Sahagun-Pelayo states that he was told that he would "rec[e]ive pa[y]m[e]nts and protection from [traffickers]" if he accepted the agents' offer. Compl. App. at 2. In return for his services, plaintiff asserts that he also would receive "protection for [his] family." *Id.* App. at 8.

No specific payment terms of the alleged confidential informant verbal agreement are provided in the complaint. Instead, Mr. Sahagun-Pelayo includes a bill which demands $26,000,000 for information leading to arrests, and $5,750,000 for information leading to the seizure of drugs and currency, with a credit for $40,000 in payments plaintiff alleges he has already received. Compl. App. at 9. The "Past Due Pa[y]ments 'Cash'" requested are $31,710,000, although this figure is later increased in a "Final Notice" to $84,717,000. *Id.* App. at 9, 18.

### 2. Failure to State A Claim

Defendant's primary argument that Mr. Sahagun-Pelayo's breach of contract claim is deficient is that plaintiff "has not alleged any facts to make a plausible claim that any Government representative had the requisite authority to enter into a contract with him." Def.'s Mot. at 8. In his response brief, plaintiff offers an entirely new factual allegation in an apparent attempt to cure the defect in his complaint:

> [T]he Plaintiff met with representatives of the UNITED STATES Government from Washington, DC in El Paso, Texas, who he believed had the authority to make him the offers and the security arrangements [which are the

---

[5] Mr. Sahagun's handwritten documents attached to the complaint are barely legible.

subject of the complaint in this case].

Pl.'s Resp. at 2. These government representatives are not identified by name or by the agency that they represent. In the following paragraphs of plaintiff's brief, these alleged multiple representatives become just one representative:

> [T]he Plaintiff was of the understanding that the Government's representative in that El Paso meeting at the border had the authority [to] offer and approve the contractual arrangements being disputed by the Government in their Motion to Dismiss under Rule 12(b).
>
> . . .
>
> The Government's sending a representative from Washington, DC to El Paso, Texas, shows their intent [to contract].

*Id.* at 2-3. Defendant argues, nonetheless, that plaintiff has failed to state a claim under an implied-in-fact contract theory. Def.'s Reply at 5.

It is perhaps helpful to provide a context for confidential informant contracts and disputes in this court over alleged breaches of such contracts. Many of these cases involve allegations of written contracts. *See, e.g., Vargas v. United States*, 114 Fed. Cl. 226, 229 & n.2 (2014); *Jumah v. United States*, 90 Fed. Cl. 603, 605 (2009), *aff'd*, 385 F. App'x 987 (Fed. Cir. 2010); *see also Salles v. United States*, 156 F.3d 1383, 1384 (Newman, J., dissenting) (noting that a written informant contract was alleged to have been supplemented by an oral promise in that case). Where there have been allegations of purely oral contracts, the plaintiff typically identified specific individuals and specific agencies that negotiated and entered into the alleged contract with the informant. *See, e.g., SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 650 (2007); *Dick Tracy v. United States*, 55 Fed. Cl. 679, 682 (2003); *Doe v. United States*, 32 Fed. Cl. 472, 473 (1994) (*Doe I*), *aff'd in relevant part*, 100 F.3d 1576 (Fed. Cir. 1996) (*Doe II*).

Here, Mr. Sahagun-Pelayo has failed to allege facts as to the specific agent

of the government who contracted with him, or as to the specific agency of the government that contracted with him.[6] In the court's view, the complaint, as supplemented by plaintiff's response brief, does not provide sufficient facts to plausibly suggest that any government employee had implied or express actual authority to enter into a contract with Mr. Sahagun-Pelayo that would possibly entitle him to the relief he seeks in the complaint.

Perhaps the most instructive and analogous case is *Jumah*. The plaintiff in that case, Mr. Amin Jumah, claimed that his confidential informant contract obligated the DEA to pay him for services rendered. Several written agreements had been signed by the DEA and Mr. Jumah, and he also had documentation of several payments from the DEA that he had received over the years. *Jumah*, 90 Fed. Cl. at 605. The government challenged Mr. Jumah's contract claims on the grounds that his written contracts had expired before the informant services, if any, had been provided, and that Mr. Jumah failed to plead either the terms of any implied-in-fact contract or the identity of the person with whom Mr. Jumah contracted. *Id.* at 606.

The court noted that the formation of an implied-in-fact contract with the United States requires "(1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the Government in contract on the part of the government representative whose conduct is relied upon." *Jumah*, 90 Fed. Cl. at 610 (citations omitted). Mr. Jumah relied upon a conversation he had with a DEA special agent for his implied-in-fact confidential informant contract. *Id.* at 611. The court found, however, that a DEA special agent has neither express actual authority nor implied actual authority to bind the United States in a confidential informant contract for payments exceeding $250,000. *Id.* at 612-14. The court therefore dismissed Mr. Jumah's contract claims pursuant to RCFC 12(b)(6) for failure to state a claim. *Id.* at 614.

In this case, Mr. Sahagun-Pelayo's contract claim is even less plausible than the one dismissed in *Jumah*. No allegations of written agreements were made by plaintiff, and no documentation of previous payments received from the United States was attached to the complaint. Mr. Sahagun-Pelayo's vague and inconsistent description of conversations he had with various federal agents lacks

---

[6]/ Indeed, plaintiff's allegations in this regard are both vague and contradictory.

9

the specificity of the particular promise Mr. Jumah alleges he received from a specific DEA agent on a specific day. In the context of confidential informant claims, Mr. Sahagun-Pelayo's contract claim is not plausible under *Twombly* or under *Iqbal*.

The court notes, in particular, that plaintiff relies on his alleged belief that an unidentified government official (or officials) had the authority to make him certain promises in return for informant services. *See* Pl.'s Resp. at 2 ("[T]he Plaintiff met with representatives of the UNITED STATES Government from Washington, DC in El Paso, Texas, who he believed had the authority to make him the offers and the security arrangements [which are the subject of the complaint in this case]."); *id.* (stating that "Plaintiff was of the understanding that the Government's representative in that El Paso meeting at the border had the authority [to] offer and approve the contractual arrangements being disputed by the Government in their Motion to Dismiss under Rule 12(b)"). Defendant argues that plaintiff's alleged subjective belief in an official's authority to contract is irrelevant, because actual authority to contract, not just apparent authority, is required. Def.'s Reply at 3 n.1 (citing *Winter v. Cath-dr/Balti Joint Venture*, 497 F.3d 1339, 1344 (Fed. Cir. 2007)). Defendant is correct; "[a]nyone entering into an agreement with the Government takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (citations omitted). Furthermore, even if the complaint or plaintiff's response brief could somehow be read to include a statement asserting the actual authority of any of the federal employees who are alleged to have contracted with Mr. Sahagun-Pelayo, such a bare statement would be a mere legal conclusion which would not be entitled to the favorable inferences of a factual allegation. *E.g., Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Here, the court finds no plausible allegation in the complaint or in plaintiff's response brief that anyone who spoke with Mr. Sahagun-Pelayo had express or implied actual authority to enter into a contract whereby plaintiff is now owed $84,717,000. Compl. App. at 18. That type of authority is beyond the authority of the specific individuals identified in the complaint. *See Salles*, 156 F.3d at 1384; *Doe*, 110 F.3d at 1584-85; *Jumah*, 90 Fed. Cl. at 612-14; *Tracy*, 55 Fed. Cl. at

682-84. Furthermore, plaintiff's vague reference to an individual or individuals from Washington, DC is not specific enough to survive a challenge to the sufficiency of the complaint. *See, e.g., Doe v. United States*, 95 Fed. Cl. 546, 582-85 (2010) (holding that a complaint's reference to vaguely identified officials of unknown authority was insufficient for an implied-in-fact contract claim to survive a motion brought under RCFC 12(b)(6)).

According all favorable inferences to the factual allegations of plaintiff's complaint, even as clarified by his response brief, there is no plausible inference that an implied-in-fact contract supports the claims presented in this suit. In other words, it is not plausible that any offer of payment or protection described by plaintiff created an implied-in-fact contract which now binds the United States to pay Mr. Sahagun-Pelayo the money he seeks in this suit. *See, e.g., Jumah*, 90 Fed. Cl. at 612-14 (describing limits on contracting with confidential informants). For this reason, the court must grant defendant's RCFC 12(b)(6) motion to dismiss plaintiff's contract claim. Because both of plaintiff's claims are dismissed, this case must be closed.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss, filed January 28, 2014, is **GRANTED**;

(2) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** plaintiff's **tort claim** for lack of subject matter jurisdiction, **without prejudice**, and plaintiff's **breach of contract claim** for failure to state a claim upon which relief may be granted, **with prejudice**; and,

(3) Each party shall bear its own costs.

/s/ Lynn J. Bush
LYNN J. BUSH
Senior Judge

11